IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FCE BENEFIT ADMINISTRATORS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN HARBOR INSURANCE COMPANY,<br><br>Defendant. | Case No. 21-cv-00186-CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT TO INDIAN HARBOR AND GRANTING LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIMS** |

Plaintiff FCE Benefit Administrators, Inc. ("FCE"), a corporation providing third party administrator services for employee benefit plans under ERISA, is suing Defendant Indian Harbor Insurance Company ("Indian Harbor"). Indian Harbor issued an Errors and Omissions Policy ("Policy") to FCE covering damages and defense expenses arising from FCE's performance of professional services. FCE alleges that Indian Harbor breached the Policy in effect from June 6, 2017 to June 6, 2018 in paying out only $3 million of the $5 million liability limit. Indian Harbor moves for summary judgment, arguing that the correct liability limit was $3 million. It also moves for leave to file an amended answer and counterclaims sounding in unjust enrichment on the basis that it actually paid out more than $3 million. The Court finds that oral argument is unnecessary. The Court GRANTS summary judgment to Indian Harbor and GRANTS Indian Harbor leave to amend its answer and counterclaims.

I.  **BACKGROUND**

   A.  **The Policy Between FCE and Indian Harbor**

"Subject to all terms and conditions of this policy," Indian Harbor promised to "pay on [FCE's] behalf damages and defense expenses arising out of a claim first made against [FCE]

during a policy year, and reported to [Indian Harbor] in writing during that policy year, by reason of an actual or alleged act or omission including **personal injury**, in the performance of **professional services**." Policy (dkt. 21-1, Ex. B), Sec. B.[1]  FCE's "professional services" that are covered by the Policy are defined in Item 7 as those "[s]olely in the performance of: Third party administration."

The Policy defines "**claim**" is a "written demand received by [FCE] for money, services, equitable relief or a request to toll or waive any applicable statute of limitations." Policy (dkt. 21-1, Ex. B), Sec. A.1.  The relevant limit of liability depends on when the acts or omissions underlying the claim occurred:

> E.1.a.  For any **claim** based exclusively on acts or omissions including **personal injury** in the performance of **professional services** committed prior to June 6, 2017, the each **claim** limit of liability is $3,000,000.
>
> E.1.b.  For any **claim** based exclusively on acts or omissions including **personal injury** in the performance of **professional services** committed on or after June 6, 2017, the each **claim** limit of liability is $5,000,000.

Id., Endors. #002, Sec. E.1.  However, "[t]wo or more claims arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single claim first made on the earliest of the date that[] the first such claim was made." Id., Sec. I.3.

The Policy explains which expenses and damages exhaust the limits of liability.  It provides that "[p]ayment of **defense expenses** as well as damages reduce and may exhaust the Limits of Liability." Id., Endors. #002, Sec. E.3.  It further states that Indian Harbor's "obligation to defend and/or pay any damages or **defense expenses** will cease when the Limit of Liability has been exhausted." Id., Endors. #003, Sec. D.3.  The Policy defines "**defense expenses**" as "reasonable and necessary fees charged and expenses incurred by attorneys designated by [Indian Harbor] to represent" FCE, as well as "all other reasonable and necessary fees, costs and expenses incurred at [Indian Harbor's] request." Id., Sec. A.4.

---

[1] The Policy at issue was amended by three endorsements effective June 6, 2017.  The underlined terms are bolded and specifically defined in the Policy.

2

### B. The Underlying Claim Against FCE

On November 29, 2017, Standard Security Life Insurance Company of New York and Madison National Life Insurance Company, Inc. ("Claimants"), insurers licensed to sell health and disability policies, filed a petition for arbitration against FCE. See Arbitration Pet. (dkt. 1-2). Claimants alleged that they had entered into an Administrative Services Agreement with FCE in 2011 in which FCE was to act as a third-party administrator providing administrative, sales and marketing services for Claimants' group insurance plans. See id. at 2-3. FCE agreed to procure and process applications for insurance policies; prepare and issue policies in accordance with Claimants' underwriting rules and regulations; bill collect and process premium payments and third-party fees; maintain and administer premium and claim accounts; process and pay claims in accordance with Claimants' review procedures; and prepare, maintain, and provide Claimants with all relevant and appropriate information concerning the business. Id. Claimants alleged that FCE breached the Services Agreement by failing to process healthcare claims in a timely and proper manner, taking excessive and unearned fees, and causing the claimants to incur various penalties, fines, and fees. See id. at 4–7. In May 2015, Claimants canceled their agreement with FCE. See Standard Sec. Life Ins. Co. of New York v. FCE Benefit Administrators, Inc., 967 F.3d 667, 669 (7th Cir. 2020).

In 2018, the arbitral panel held that FCE owed Claimants $5,348,352.81, issued another award denying all other relief claimed by the parties, and the two awards were confirmed by a federal district court and judgment entered against FCE. See id. at 669–71. The Seventh Circuit affirmed. Id. at 674–75.

FCE tendered the arbitration petition to Indian Harbor in a timely manner on March 20, 2018. See Letter to Indian Harbor (dkt. 21-1, Ex. A). Indian Harbor paid $2,348,596.30 to FCE in defense expenses. See Markoutsis Decl. (dkt. 21-1) ¶¶ 12-14 & Ex. E, H, I. After the Seventh Circuit affirmed the arbitration, Indian Harbor also issued a wire payment to FCE for $1,049,175.65, as indemnity for the judgment. See id. ¶ 12.e. & Ex. G. These sums totaled $397,771.96 more than the $3 million Indian Harbor believed to be its obligation. See id. ¶ 11. This apparently stemmed from Indian Harbor's failure to report its own payments—a failure

3

Indian Harbor discovered only recently—and it is the main subject of Indian Harbor's motion for leave to amend its answer and counterclaims. Id.; see Mot. to Amend (dkt. 20).

### C. This Proceeding

On January 8, 2021, FCE filed this action, alleging that Indian Harbor only paid damages and defense expenses up to $3 million when it owed $5 million under the Policy. Compl. (dkt. 1) ¶¶ 14–15. FCE alleged that Indian Harbor had breached the contract and the implied covenant of good faith and fair dealing. FCE requested declaratory relief, indemnity against the underlying arbitral award up to $5 million, attorneys' fees and costs for both the arbitral suit and this one, punitive damages, and prejudgment interest. See id. at 6.

Indian Harbor filed an answer on March 15. See Ans. (dkt. 13). On September 20, Indian Harbor moved for summary judgment and for leave to file an amended answer and counterclaims. See MSJ (dkt. 21); Mot. to Amend. FCE opposed both motions. Opp. to MSJ (dkt. 29); Opp. to Mot. to Amend (dkt. 24). FCE later moved for partial summary judgment on the basis of the same arguments in its opposition to Indian Harbor's motion. See FCE's MSJ (dkt. 36).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

On a summary judgment motion, a defendant "without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2727 (3d ed.1998)). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

4

burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." Id. (internal citation omitted). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." Id. at 1103 (internal citation omitted). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. See id.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend a pleading] when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). However, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Of these considerations, "prejudice to the opposing party [ ] carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. Nevertheless, a proposed amendment may be denied as futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff–Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

## III. DISCUSSION

### A. Motion for Summary Judgment

Indian Harbor argues that summary judgment is appropriate because it only owed $3

million under the Policy. The Court finds that the clear text of the Policy confirms that Indian Harbor is correct. This suit concerns exactly one "claim" that arose from acts and omissions occurring prior to June 2017. Indian Harbor owed $3 million in defense expenses and damages.

### 1. Costs Under the Duty to Defend

To the contrary, FCE first argues that Indian Harbor had a duty to defend FCE that was not subject to any of the liability limits in the policy. This argument is clearly wrong.

In California, parties may contract for "'self-consuming' or 'burning limits' [insurance] policies," under which "the indemnification limit is reduced dollar for dollar by defense costs until zero is reached and the duty to indemnify and the duty to defend are then terminated." Aerojet-Gen. Corp. v. Transp. Indem. Co., 948 P.2d 909, 932 n.29 (Cal. 1997).

This Policy did just that. It provided that "[p]ayment of defense expenses as well as damages reduce and may exhaust the Limits of Liability." Policy, Endors. #002, Sec. E.3. It further states that Indian Harbor's "obligation to defend and/or pay any damages or defense expenses will cease when the Limit of Liability has been exhausted." Id., Endors. #003, Sec. D.3. "Defense expenses" are "reasonable and necessary fees charged and expenses incurred by attorneys designated by [Indian Harbor] to represent [FCE]" and "all other reasonable and necessary fees, costs and expenses incurred at [Indian Harbor's] request." Id., Sec. A.4.

FCE acknowledges that "defense expenses" may "reduce and exhaust the limits of liability." Compl. ¶ 13. It nonetheless argues that "legal fees and costs incurred pursuant to [Indian Harbor's] duty to defend" are not "defense costs." See Opp. at 6. This argument makes little sense: "costs incurred pursuant to the duty to defend" surely are "defense expenses." FCE emphasizes that the Policy states that "[t]he company will have the right and duty to defend all covered claims brought in the United States." Policy, Endors. #003, Sec. D.1. But this sentence is simply a statement of the law—insurers have a duty to defend—and did not create limitless liability for "duty to defend costs" outside of the "defense expenses" repeatedly discussed in the Policy. Alternatively, FCE argues that defense expenses only come under the limit of liability where they are incurred "by attorneys designated by" Indian Harbor, and that where Indian Harbor neglected to designate an attorney, costs are not subject to the Policy's limits. See id., Sec. A.4.

But defense expenses also include "reasonable and necessary fees, costs and expenses incurred at [Indian Harbor's] request." Id. Costs under the duty to defend are clearly included.

Because costs incurred under the duty to defend are "defense expenses" under the Policy, they are subject to the limits to liability.

### 2. The Timing and Number of Claims

FCE also makes two arguments as to the timing and number of claims to suggest that this lawsuit does not stem from just one claim subject to the $3 million per-claim limit. First, it argues that the arbitration claim itself consists of multiple separate claims, each of which was independently subject to the $3 million per-claim liability limit. Opp. (dkt. 29) at 16-22. Second, it seems to argue that some of the events giving rise to this suit occurred after June 6, 2017, so this later "claim" is governed by the $5 million per-claim liability limit in Endorsement #002. Opp. at 8-10; see Policy, Endors. #002, Sec. E.1.b. FCE is incorrect on both counts.

As noted above, the Policy defines a "claim" as a "written demand received by the Insured for money." Contract, Sec. A.1. The each-claim limit of liability is $3 million "[f]or any claim based exclusively on acts or omissions . . . in the performance of professional services committed prior to June 6, 2017." Id., Endors. #002, Sec. E.1.a. The each-claim limit of liability is $5 million "[f]or any claim based exclusively on acts or omissions . . . in the performance of professional services committed on or after June 6, 2017." Id., Endors. #002, Sec. E.1.b. It further provides that "[t]wo or more claims arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single claim first made on the earliest of the date that[] the first such claim was made." Id., Sec. I.3.

Claimants' petition for arbitration consists of a single pre-2017 claim. It was filed on November 29, 2017 and tendered to Indian Harbor on March 20, 2018. The written demand concerned Claimants' dissatisfaction with FCE's "performance of professional services" prior to May 2015. Standard Sec., 967 F.3d at 669; Policy, Endors. #002, Sec. E.1.a; see also Arbitration Pet. at 4–7. It constituted exactly one "written demand received by [FCE] for money." Policy, Sec. A.1. But even assuming that it could somehow be construed as multiple claims, the "multiple

7

claims" provision confirms that it is "a single claim" because all putative claims arose "out of the same or related facts, circumstances, situations, transactions or events." Id., Sec. I.3. Because it was based on acts or omissions prior to June 6, 2017, it is subject to the $3 million per-claim limit. Id., Endors. #002, Sec. E.1.a.

Because the underlying acts and omissions at issue in this case all occurred before June 2017, they consist of one claim covered up to the $3 million per-claim limit. The $5 million limit applies only to claims based "exclusively" on events after June 6, 2017. Id., Endors. #002, Sec. E.1.b. While FCE incurred some defense expenses and damages after this date, they derived from acts and omissions that "exclusively" occurred before May 2015. And even if they could be construed as multiple claims of which one occurred after 2017, the "multiple claims" provision confirms that all putative claims arising out of the "same or related" acts or omissions must be treated as a single claim made on the earlier date. Id., Sec. I.3. Under California law, the term "related" in insurance policies typically takes a broad meaning. See, e.g., Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263, 1274 (Cal. 1993) (holding that the word "'related' . . . encompasses both logical and causal connections"). The $3 million limit applies, and it applies exactly once.

### 3. Potentiality of Coverage

FCE also argues that where there is a "potentiality" that Indian Harbor is required to defend up to a higher liability limit, Indian Harbor must do so. Opp. at 12-14. This argument also fails. Under California law, insurers have a duty to defend "mixed claims," where "some of the claims are at least potentially covered and the others are not." Buss v. Superior Ct., 939 P.2d 766, 774–75 (Cal. 1997). But, as noted above, the language of the Policy is unambiguous here: there is no potentiality of coverage beyond $3 million for one claim arising prior to June 2017.[2]

For these reasons, the Court grants summary judgment to Indian Harbor and denies summary judgment to FCE.

---

[2] Further, Buss and its progeny appear beside the point. Those cases involved insurers that refused to defend or limited their defense because they believed some of the acts or omissions were not covered. Here, Indian Harbor did defend. Thus, the question here has little to do with the duty to defend; the question is how much Indian Harbor did in fact owe under the Policy.

### B. Motion to File an Amended Answer and Counterclaims

Indian Harbor also seeks leave to amend its answer and counterclaims, which it filed in March 2021. See Mot. to Amend (dkt. 20). Having recently discovered an apparent overpayment of $397,771.96 beyond the $3 million liability limit, Indian Harbor intends to file two counterclaims: reimbursement under the Policy and unjust enrichment. See Amended Ans. (dkt. 20-1, ex A, Attach. 2). In its opposition, FCE does not argue that it would be prejudiced by amendment. See Opp. to Mot. to Amend (dkt. 24). It argues only that the proposed amendment would be futile and "clearly subject to dismissal." Id. at 1.

"Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, 316 F.3d at 1052. FCE argues that Indian Harbor's first proposed counterclaim for reimbursement under the Policy might be insufficient as a matter of law under Buss, 939 P.2d 766. However, FCE does not argue that Indian Harbor's second counterclaim for unjust enrichment would be insufficient. The Court easily concludes that FCE has not shown that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller, 845 F.2d at 214. Leave to amend is therefore appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Indian Harbor and DENIES partial summary judgment to FCE. The Court also GRANTS Indian Harbor leave to file its amended answer and counterclaims within 21 days of this order.

**IT IS SO ORDERED.**

Dated: November 12, 2021



CHARLES R. BREYER
United States District Judge