IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FCE BENEFIT ADMINISTRATORS, INC., <br><br>   Plaintiff, <br><br>   v. <br><br> INDIAN HARBOR INSURANCE COMPANY, <br><br>   Defendant. | Case No. 21-cv-00186-CRB <br><br> **ORDER GRANTING SUMMARY JUDGMENT** |

Plaintiff FCE Benefit Administrators, Inc. ("FCE") provides third party administrator services for employee benefit plans under ERISA.  Defendant Indian Harbor Insurance Company ("Indian Harbor") issued an Errors and Omissions Policy ("Policy") to FCE covering damages and defense expenses arising from FCE's performance of professional services.  In August 2020, FCE paid an arbitration judgment of $5.7 million for an underlying claim that was covered by the Policy.  Indian Harbor paid FCE about $3 million in damages and defense costs.

FCE sued Indian Harbor, arguing that the correct liability limit was $5 million.  The Court held that the liability limit was $3 million and granted summary judgment to Indian Harbor.  See Am. Order (dkt. 43) at 6-9.  Indian Harbor then filed a counterclaim for restitution of its mistaken payments to FCE in excess of $3 million.  See Countercl. (dkt. 42).  Indian Harbor moved for summary judgment, submitting that it had overpaid $281,672.16.  See Mot. (dkt. 51) at 5.  The Court finds oral argument unnecessary.  The Court GRANTS summary judgment to Indian Harbor and holds that FCE must pay restitution and prejudgment interest.

## I. BACKGROUND

The Court will provide only an abbreviated summary of the facts relevant to this motion. Additional facts are in its previous order.

FCE is a California corporation. Porter Decl. (dkt. 53) ¶ 2. FCE conducts marketing and sales activities from its "corporate office" in San Mateo, California. Id.; see Compl. (dkt. 1) ¶ 5. But FCE conducted the activities that gave rise to the underlying claim at its "operations center" in San Antonio, Texas. Porter Decl. ¶¶ 2, 10, 14.

Indian Harbor is a corporation incorporated in Delaware and with its principal place of business in Connecticut. Countercl. ¶ 1.

Indian Harbor issued the Policy to FCE in San Mateo, California. Compl. ¶ 2. On March 20, 2018, FCE notified Indian Harbor of an arbitration proceeding concerning the underlying claim in this case. Markoutsis Decl. (dkt. 51-1) ¶ 2. On December 17, 2018, Indian Harbor agreed to defend FCE as to the underlying claim, subject to a reservation of rights set forth in its coverage position. Countercl. ¶ 17 & Ex. B; Markoutsis Decl. ¶¶ 6-7. Indian Harbor reserved its rights under the Policy and applicable law, including the right to seek reimbursement. It stated: "In light of the extensive damages claimed by Petitioners in the Operative Pleading, Indian Harbor reserves its right to limit liability for damages and defenses expenses pursuant to the above-referenced limits [i.e., including the liability limit]." Countercl. Ex B, at 7. It also stated: "Moreover, for all incurred claim expenses, Indian Harbor also reserves its right to seek apportionment and recoup from FCE all claim expenses incurred for uncovered allegations." Id. at 8.

Over the next two years, Indian Harbor paid FCE a total of $2,232,496.51 in defense expenses for the underlying claim. Markoutsis Decl. ¶¶ 14a-d, 15-17 & Ex. A-E. This sum included a $850,029.66 wire payment made in September 2019 that Indian Harbor failed to properly note in its records. Markoutsis Decl. ¶¶ 13, 14d & Ex. B.[1]

---

[1] Indian Harbor paid out $56,253.23 of the total $2,232,496.51 in defense expenses after August 14, 2020, when it paid out damages for the underlying arbitration award. Markoutsis Decl. ¶ 14o-w. This money was thus paid after the $3 million liability limit was exhausted.

On July 28, 2020, the Seventh Circuit affirmed a $5.7 million arbitration award against FCE for the underlying claim. See Standard Sec. Life Ins. Co. of New York v. FCE Benefit Administrators, Inc., 967 F.3d 667 (7th Cir. 2020). On August 14, Indian Harbor paid FCE $1,049,175.65 in damages. Markoutsis Decl. ¶¶ 14e & Ex. C, 15m-w & Ex. D. After considering filing a petition for rehearing or a petition to the Supreme Court, FCE borrowed money and paid the $5.7 million judgment. Porter Decl. ¶ 19.

In its previous order, the Court held that the liability limit for the underlying claim was $3 million. See Am. Order. The Court found that the underlying claim constituted one claim "by reason of" FCE's acts or omissions prior to June 6, 2017, and/or any possible later claims related back to the initial one (and its $3 million liability limit) because they arose out of "related facts." Id. at 7-8. The Court also held that "defense expenses" include all costs incurred under the duty to defend. Id. at 6-7. The Court also held that Indian Harbor did not have a duty to defend beyond $3 million based on the potentiality of further coverage. Id. at 8-9.

In all, Indian Harbor paid FCE $3,281,672.16 in damages and defense expenses. Markoutsis Decl. ¶ 17.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

On a summary judgment motion, a defendant "without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2727 (3d ed.1998)). "In order to carry its burden of production,

the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." Id. (internal citation omitted). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything." Id. at 1103 (internal citation omitted). If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment. But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. See id.

### III. DISCUSSION

The Court concludes that FCE owes Indian Harbor $281,672.16 in restitution, plus prejudgment interest.

#### A. Choice of Law

In a diversity case, the Court applies the choice-of-law rules of the forum state. Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402 (9th Cir. 1990). In California, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. However, California courts engage in "governmental interest analysis" of choice-of-law questions beyond the scope of Civil Code § 1646. See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1459-61 (2007) (describing this line of cases). Courts have sometimes used a governmental interest analysis in contract-law cases where the issue is not one of contract interpretation. See generally id.

FCE agrees that "interpretation of [the] insurance policy . . . was appropriate to decide under California law." Opp. at 8-9. Yet FCE contends that a different rule applies to this motion because it is not about contract interpretation but rather about the "validity and enforceability of the policy." Id. at 8. FCE does not argue that the Policy itself is invalid or unenforceable. But the Court understands its argument to be that Civil Code § 1646 governs interpretation of the contract, while the governmental interest analysis governs background principles of contract and insurance law (somehow defined).

It is unnecessary to decide which choice-of-law rule applies here because California substantive law applies under either rule. Under Civil Code § 1646, California law applies because the Policy was "made" in California, and the Policy nowhere suggests that performance would occur elsewhere. See Countercl., Ex. A (Policy). Under FCE's preferred rule, the same result obtains. The governmental interest analysis requires the court to (1) determine whether California and Texas laws are different; (2) examine each state's interest in applying its law to this case to determine the extent of a conflict; and (3) in the event of a conflict, apply the law of the state whose interest would be more impaired if it were not applied. See Kearney v. Salomon Smith Barney, Inc., 137 P.3d 914, 922 (Cal. 2006). Even assuming that the laws of California and Texas are different and that they conflict here (steps 1 and 2), the Court easily concludes that California would be more impaired if its law were not applied (step 3). FCE is a California corporation with its "corporate office" in California, and the Policy was made in California. See Porter Decl. ¶ 2; Countercl., Ex. A. California's policy interest in governing insurance disputes would be significantly impaired if it could not apply its law to contracts made in California to provide insurance for a California corporation with its corporate office in California. Conversely, Texas's interests would be far less impaired, as it has far less interest in governing an insurance dispute over a contract made elsewhere involving non-resident corporations, one of which has operations in Texas. The Court easily concludes that it must apply California law.

**B.     Restitution**

Indian Harbor argues that it has a quasi-contractual right to the $281,672.16 it paid FCE over the $3 million liability limit. It emphasizes that it reserved its rights under the law. Countercl. Ex B, at 7, 8; see Blue Ridge Ins. Co. v. Jacobsen, 22 P.3d 313, 317 (Cal. 2001). It contends that it has a right to "sums paid . . . for which [an insurer] had no duty to pay under the Policy." Mot. at 9. At least on these facts, the Court agrees.

Absent an affirmative defense, a party can ordinarily collect restitution for mistaken payments. In Buss v. Superior Court, 939 P.2d 766, 775 (Cal. 1997), the California Supreme Court held that an insurer cannot collect restitution for costs paid to defend a "mixed" action that includes claims that are "at least potentially covered." But the Court noted that an insurer can collect restitution for costs paid to defend an action when it is later found that none of the claims were potentially covered. In such a case, the right is in quasi-contract and the remedy is restitution. Buss provided a broad overview of the law of restitution in insurance cases:

> The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from "unjust enrichment" and in favor of the person who suffers loss thereby. The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed "unjust." It is like the case of A and B. A has a contractual duty to pay B $50. He has only a $100 bill. He may be held to have a prophylactic duty to tender the note. But he surely has a right, implied in law if not in fact, to get back $50. Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall.

Id. at 776-77; see Scottsdale Ins. Co. v. MV Transportation, 115 P.3d 460, 468-69 (Cal. 2005) (clarifying that an insurer may retroactively get restitution for all defense costs if a court finds that the insurer lacked any duty to defend).

Unlike in Buss or Scottsdale, there is no question here as to whether the underlying claim was covered or whether Indian Harbor had a duty to defend. All agree that the claim was covered and Indian Harbor had a duty to defend. And in its prior order, the Court held that the duty to defend lasted until it had paid out the $3 million liability limit in the

6

Policy. See Am. Order.

Although the primary holding of Buss does not resolve this case, its application of restitution principles indicates that Indian Harbor has an implied-in-law right to its overpayments to FCE because FCE never bargained for them. FCE was "enriched" by $281,672.16 of "unbargained-for defense costs" (or damages) that were "inconsistent with the insurer's freedom under the policy and therefore must be deemed 'unjust.'" Buss, 939 P.2d at 777. "[FCE] could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall." Id.

Nearly every authority on mistaken payments supports application of restitution on facts like those here. See, e.g., Restatement (Third) of Restitution and Unjust Enrichment § 6 (2011) ("Payment by mistake gives the payor a claim in restitution against the recipient to the extent payment was not due."); Id. § 6 cmt. a ("[T]he fact that the claimant may have acted negligently in making a mistaken payment is normally irrelevant to the analysis of the claim."); 55 Cal. Jur. 3d Restitution § 15 ("[W]here an insurer pays an amount not covered under its policy, it has a right of reimbursement that is implied-in-law under an unjust enrichment theory."); see also Restatement (Third) of Restitution § 6 cmt. f (noting that courts in mistaken-payment insurance cases strike a balance between ensuring that payments are final (disfavoring restitution) and encouraging insurers to promptly pay claims (favoring restitution)); 3 Palmer, Law of Restitution §§ 14.8, 14.10-14.14 (1978 & Supp.) (similar).

None of FCE's four arguments against restitution are convincing. First, FCE argues that Buss and Scottsdale are based on a policy rationale not present here. Scottsdale explained that "an insurer facing unsettled law concerning its policies' potential coverage . . . should not be forced either to deny a defense outright, and risk a bad faith suit by the insured, or to provide a defense where it owes none without any recourse against the insured for costs expended." Opp. at 17 (quoting Scottsdale, 115 P.3d at 470). FCE is correct that there was no such Catch-22 present here: Indian Harbor simply made a mistake. But, as described above, Buss and Scottsdale also laid out general restitution

principles that apply.[2]

Second, FCE argues that "there are issues of fact as to whether Indian Harbor believed that the claim was subject to the lower $3 million limit when it" overpaid. Opp. at 18. FCE's argument seems to be that restitution is inappropriate because Indian Harbor subjectively believed (at the time) that it was required to make the payment. Yet FCE provides no authority for the view that contemporaneous subjective belief is relevant to the availability of restitution for a mistaken payment. Indeed, the argument defies logic: if the law required a party making a mistaken payment to have contemporaneous awareness of the mistake, it would necessarily not be a mistake. The Court has held that the $3 million liability limit applied here. See Am. Order. Absent an accord between the parties that Indian Harbor would pay more—which the facts in no way suggest—any payments beyond the $3 million limit were mistaken payments.

Third, FCE argues that it relied on Indian Harbor's expected contribution of $1,049,175.67 to pay the $5.7 million judgment, thus undergoing a detrimental change in position. Opp. at 19-20. Courts sometimes find that a change of position can be a defense to restitution, at least when the "mistaken payment causes the recipient to engage in a transaction with a third party which would not otherwise have taken place, and in which the recipient sustains a loss." Restatement (Third) of Restitution § 65 cmt. e. If Indian Harbor had not overpaid, FCE contends that it may not have paid the judgment but instead "petition[ed] for rehearing in the Seventh Circuit, petition[ed] for review in the Supreme Court, [or] fac[ed] a collection action and/or bankruptcy." Opp. at 20. Yet the total arbitration award was $5.7 million, and there is no serious factual claim that FCE would have pursued an alternative path if Indian Harbor's payout had been $281,672.16 less. The record indicates that FCE understood that the alternatives to paying the judgment had an "extremely low" probability of success. See Porter Decl., Ex. F (Statement by FCE's lawyer after the Seventh Circuit upheld the arbitration award: "We have explored our

---

[2] The Court agrees that Buss and Scottsdale do not permit Indian Harbor to collect on the Policy itself. Yet, as described, the quasi-contractual principles do permit a claim for restitution.

options, which would consist of seeking a rehearing or petition to the Supreme Court. We do not deem either option very viable at this point, as the chance of success would be extremely low.").[3] Even if Indian Harbor had not overpaid by $281,672.16, FCE would still have borrowed money to pay the rest of the judgment. There is no genuine factual dispute that this affirmative defense could apply.

Fourth, FCE argues that "the payment was pursuant to a bonafide bargain." Opp. at 20. However, FCE provides no factual support for its contention that Indian Harbor conferred the overpayment "as an offer of a bargain which [FCE] accept[ed]." Restatement (Third) of Restitution § 12.

The Court concludes that FCE owes Indian Harbor $281,672.16 in restitution.

### C. Prejudgment Interest

Indian Harbor asks for prejudgment interest dating from September 9, 2021, when it advised FCE of the overpayment and that it would seek reimbursement. See Mot. at 10-11; see Ashton Decl. (dkt. 20-1) ¶ 2 & Ex. A. A party is entitled to prejudgment interest when damages are "certain, or capable of being made certain by calculation" and "the right to recover . . . vested in him upon a particular day." Cal. Civ. Code § 3287(a). A dispute or denial of liability does not make damages uncertain. U.S. Fid. & Guar. Co. v. Lee Invs. LLC, 641 F.3d 1126, 1140 (9th Cir. 2011). Because damages were certain and the right to recover vested on September 9, 2021 (if not earlier), the Court awards prejudgment interest from that date to the date of the judgment in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment to Indian Harbor and awards $281,672.16 plus prejudgment interest to the date of the judgment.

**IT IS SO ORDERED.**

Dated: February 22, 2022

CHARLES R. BREYER
United States District Judge

---

[3] Indeed, FCE very possibly would have sustained a greater loss had it pursued an alternative path.

9